# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RAMSEY TREVINO, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| CENTER FOR HEALTH CARE SERVICES, | § | SA-08-CV-0140 NN |
| | § | |
| Defendant. | § | |

## ORDER DENYING MOTION FOR SUMMARY JUDGMENT

This order addresses the motion for summary judgment filed by defendant Center for Health Care Services (the Center).[1] The Center asked for summary judgment on all plaintiff Ramsey Trevino's claims: gender discrimination, race discrimination, hostile work environment based on gender-discrimination, and retaliation. I questioned whether Trevino had exhausted her race discrimination claim because the record did not include a charge of discrimination based on race,[2] but Trevino has since shown that she exhausted that claim by complaining about race discrimination in a second charge of discrimination.[3] After considering the Center's arguments and the summary-judgement evidence, I will deny the motion.

Trevino's claims. Trevino alleged that the Center treated her differently because of her gender and race in regards to disciplinary issues, job assignments, job opportunities, job duties,

---

[1]Docket entry # 42.

[2]Docket entry # 46.

[3]Docket entry # 47.

raises and promotions.[4] Title VII of the Civil Rights Act of 1964—42 U.S.C. § 2000e-2—makes it unlawful "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex. . . ."[5] Where no evidence of direct discrimination exists, a plaintiff must first present a prima facie case of discrimination.[6] To make a prima case of disparate treatment, the plaintiff must demonstrate that (1) she was a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) that others similarly situated were more favorably treated.[7]

Whether Trevino suffered an adverse employment action. The Center maintains Trevino cannot make a prima facie case of discrimination, in part, because no evidence exists that Trevino suffered an adverse employment action. "Title VII was designed to address ultimate employment decisions, not to address every decision made by employers that arguably might have some tangential effect upon those ultimate decisions."[8] "Ultimate employment decisions include hiring, discharging, promoting, compensating, or granting leave, but not 'events such as disciplinary filings, supervisor's reprimands, and even poor performance by the employee—

---

[4]Docket entry # 37, ¶ 11.

[5]42 U.S.C. § 2000e-2(a)(1).

[6]*See Turner v. Baylor Richardson Med. Ctr*, 476 F.3d 337, 345 (5th Cir. 2007).

[7]*See Rutherford v. Harris County, Tex.*, 197 F.3d 173, 184 (5th Cir. 1999) (stating the plaintiff's requirements for a prima facie case in a disparate treatment case).

[8]*Dollis v. Rubin*, 77 F.3d 777, 781-2 (5th Cir. 1995) (citation omitted).

2

anything which might jeopardize employment in the future.'"[9] Trevino complains about changes in work schedule and disciplinary actions—actions which may not rise to the level of an adverse employment action—but she also complains about not being promoted and being denied the pay raise associated with a promotion.

The Center argues Trevino cannot prove that she was not promoted because no evidence exists that Trevino applied for a promotion. Specifically, the Center argued that Trevino did not complete an on-line application for a promotion. Trevino, however, presented summary judgment evidence raising a fact question about whether an application is required for a promotion. Trevino's summary-judgment evidence shows that Trevino asked her supervisors about a promotion, but was told that the position was on hold. Trevino's summary-judgment evidence also shows that other Center employees were promoted without completing an on-line application and that some open positions were filled without being posted for on-line applications.[10] This evidence undermines the Center's argument for summary judgment because it raises a fact question about whether Trevino was denied a promotion.

<u>Whether Trevino was treated differently</u>. The Center also maintains Trevino cannot make a prima facie case of discrimination because no evidence exists that Trevino was treated differently. The Center argued that although Trevino was disciplined for medication errors, she

---

[9]*Messer v. Meno*, 130 F.3d 130, 140 (5th Cir. 1997).

[10]*See* docket entry # 44, exh. A, pp. 79-83; exh. B, pp. 65-66 (Center's Human Resources Director's testimony that some employees were promoted without applying); exh. I, p. 65 (Center employee Doreen Vernon's deposition testimony stating that she was promoted to program director without applying); & exh. K, ¶ 16 (former Center employee Karen Griffin declaring that she was aware of employees being placed in positions before they applied, and explaining that an employee who did not apply was hired for a position for which she applied).

3

cannot prove that other staff members were treated differently for committing nearly identical infractions. Trevino, however, denies having made medication errors and presented summary-judgment evidence indicating that other staff members were not disciplined for medication errors.[11] In addition, Trevino presented other summary-judgment evidence that she was treated less favorably than other staff members. She presented evidence of working less-preferred shifts, being ridiculed by staff members, working holidays, being assigned more job duties than other staff members, being denied promotional opportunities, and being denied help needed to do her job.[12] Trevino's summary-judgment evidence raises a fact question about whether she was treated less favorably than others similarly situated.

Whether Trevino was required to complain in writing. The Center also maintains it is entitled to summary-judgment because Trevino failed to adequately complain pursuant to the Center's Employee Handbook. The Center maintains it was not required to investigate Trevino's complaints because she did not submit a written complaint to the Human Resources Director.[13] This position appears to be based on the misunderstanding that title VII prohibits unlawful discrimination unless an employee complies with an employer's procedures for employee complaints.[14] Title VII requires an employee to exhaust her administrative remedies prior to

---

[11] Docket entry # 44, exh. A, pp. 130-37, 140 & 151-52.

[12] Docket entry # 44, exh. A, pp. 51-53, 55, 57, 59, 60, 64-66, 74-81, 126-29 & 159.

[13] Docket entry # 44, exh. B, p. 55.

[14] To the extent that the Center relies on the *Ellerth/Faragher* defense discussed in *Lauderdale v. Tex. Dep't of Crim. Justice*, 512 F.3d 157 (5th Cir. 2007), that reliance fails for three reasons. First, the Center did not plead the defense as an affirmative defense. *See* docket entry # 38 (listing sovereign immunity and limitations as affirmative defenses). If the Center had pleaded the defense, the Center would be required to show that "(a) that the employer exercised reasonable care to prevent

filing a lawsuit, but it prohibits unlawful discrimination regardless of whether an employee follows the employer's procedures. The Center's employee handbook does not require an employee to complain in writing. Instead, the handbook encourages employees to "attempt to resolve workplace concerns informally by discussing issues and problems with their supervisor[s] as soon as they are aware of a workplace concern."[15] Trevino presented summary-judgment evidence that she complained to her supervisors about unlawful discrimination, but that no investigation occurred.[16] Even after Trevino filed her charge of discrimination, the Center's Human Resource Director failed to investigate Trevino's complaints,[17] despite a Center policy requiring "[a]ll Center employees . . . to fully support and uphold the letter and *spirit* of [title

---

and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Lauderdale*, 512 F.3d at 164 (citation omitted). The summary-judgment evidence raises a fact question about these elements. The second reason the Center's reliance on *Lauderdale* fails is because Trevino does not base her claim on vicarious liability for a supervisor's harassment. The third reason the defense fails is because this case is different from plaintiff Lauderdale's case. Unlike plaintiff Lauderdale, Trevino alleged an adverse employment action and complained through her chain of commend. Plaintiff Lauderdale did not allege an adverse employment action and she did not complain to anyone in her chain of command.

[15]Docket entry # 42, exh. B-2, § II.

[16]Docket entry # 44, exh. A, pp. 55, 57-59, 180-181; exh. I, pp. 21-25 (testifying that Center employees referred to Trevino as "he," but Trevino's complaints were not investigated); exh. D (explaining that when she worked as operations director, staff members referred to Trevino as "he" or "him," but stating that she did not feel it was her responsibility to constantly remind staff members to refer to Trevino as "she" or "her"); exh. K (attesting that she over-heard Trevino's coworkers and supervisors make inappropriate comments about Trevino—to include gesturing—and describing incidents where Trevino was disciplined but other staff members were not); & exh. L (reporting that Trevino complained about a supervisor commenting on her gender situation). To the extent the Center objected to Trevino's summary-judgment evidence, *see* docket entry # 45, pp. 4-5, I did not rely on hearsay.

[17]Docket entry # 44, exh. B, pp. 28, 36-38 & 42.

5

VII] and the Center's commitment to equal employment."[18] The Center's Operations Director conceded that the Center's policy does not require an employee to complain in writing and that a verbal complaint triggers the Center's responsibility to investigate the employee's concerns.[19] The Center is not entitled to summary judgment simply because Trevino did not submit a written complaint of discrimination to the Human Resources Director.

Hostile work environment. Trevino alleges that the Center discriminated against her by allowing a hostile work environment to exist and by allowing employees to make inappropriate comments and jokes about her. "[A] plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment."[20] "To support such a claim, a plaintiff must establish five elements: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment (3) based upon sex, (4) which affected a term, condition, or privilege of her employment; and (5) that her employer knew, or should have known, of the harassment and failed to take prompt remedial action."[21] The Center maintains it is entitled to summary judgment on Trevino's hostile work environment claim because her allegations of harassment are not severe or pervasive.

> To survive summary judgment, the harassment must be "so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the work place." The alleged conduct must be more than rude or offensive comments, teasing, or isolated incidents. Moreover, "implicit or explicit in the sexual content [of the harassment] [must be] the message that the plaintiff is incompetent

---

[18]Docket entry # 42, exh. B-1, § IE (emphasis added).

[19]Docket entry # 44, exh. I, pp. 18-35.

[20]*Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 66 (1986).

[21]*Skidmore v. Precision Printing & Packaging,* 188 F.3d 606, 615 (5th Cir. 1999).

because of her sex."[22]

Trevino presented summary-judgment evidence showing that she experienced harassment for years. Her evidence indicates that her coworkers and supervisors referred to Trevino as a "he-she," "cross-dresser," "transsexual," and "cross-gender,"[23] and made such comments as "you're not a woman," "why are you dressing like a woman," "you look like a man," "you look like a drag queen," "did the doctor cut off your penis," "can you have sex," "you cannot be married, you're man," and "what parts do you have?"[24] These statements are sufficient to support a claim of severe and pervasive harassment, conveying the message that Trevino is incompetent because of her sex. Despite complaining about the insults and comments, the Center did not investigate Trevino's complaints or take remedial action.[25] Although Trevino testified that she continued to do her job,[26] title VII does not require a harassed employee to fail in order to be protected. Trevino's summary-judgment evidence raises a fact question about whether Trevino worked in a hostile work environment.

<u>Retaliation</u>. The Center contends it is entitled to summary judgment on Trevino's

---

[22] *Hockman v. Westward Communications*, 407 F.3d 317, 326 (5th Cir. 2004) (citations omitted). "Frequent incidents of harassment, though not severe, can reach the level of 'pervasive,' thereby altering the terms, conditions, or privileges of employment such that a hostile work environment exists. Thus, "'the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct.'" *Lauderdale*, 512 F.3d at 163 (citation omitted).

[23] Docket entry # 44, exh. A, pp. 52 & 181; exh. D; exh. I, p.23; exh. K.

[24] Docket entry # 44, exh. A, pp. 53-55, 57 & 159.

[25] Docket entry # 44, exh. A, pp. 57-59 & 181.

[26] Docket entry # 44, exh. A, p. 64.

retaliation claim because she has not suffered an adverse employment action. "To establish a prima facie case of retaliation, the plaintiff must establish that: (1) [s]he participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action."[27] To constitute adverse employment action, "the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination."[28] I discussed Trevino's summary-judgment evidence of adverse employment action above. Trevino's summary-judgment evidence indicates that her complaints about unlawful discrimination fueled even more discrimination. Trevino's evidence about gender-based comments, scheduling changes, and increased disciplinary action raises a fact question about whether Trevino suffered adverse employment action. Even though Trevino ultimately filed a charge of discrimination, Trevino's allegations could easily dissuade a reasonable worker from making a charge of discrimination.

<u>Conclusion and court's order</u>. Trevino presented summary-judgment evidence raising fact questions about the Center's reasons for seeking summary judgment. For that reason, I DENY the Center's motion (docket entry # 42).

With the question of summary judgment resolved, this case will proceed to trial on September 14, 2009, with final pretrial conference scheduled for September 3, 2009 at 3:00 pm.

Given the thorough briefing on the summary judgment issues and familiarity with the evidence anticipated to be presented at trial, the parties may benefit from another attempt to

---

[27]*McCoy v. City of Shreveport*, 492 F.3d 551, 556-57 (5th Cir. 2007).

[28]*Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006).

voluntarily resolve this dispute by way of mediation. Should the parties require the appointment of a pro bono mediator, they should advise the Court so that one may be appointed. They are encouraged to advise the Court is writing by August 21, 2009 whether they will be scheduling a mediation conference, and if so, the date of their scheduled session. The Court would not oppose a joint request for a continuance of the trial date in order for the parties to have sufficient time to explore a voluntary resolution of this matter.

**SIGNED** on August 1, 2009.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE